FILED

AUG 11 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE GETTLEMAN

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | 08CR 634 |
| v. | ) | |
| | ) | Violation: Title 18, United States Code, |
| ROGER CANNON, JR. | ) | Sections 1341 and 1346 |
| also known as "RJ Cannon" | ) | |

MAGISTRATE JUDGE BROWN

The UNITED STATES ATTORNEY charges:

1. At times material to this count:

　　a.　Lawson Products, Inc. ("Lawson") was a publicly traded company located in Des Plaines, Illinois, that sold products to various entities in the public and private sectors. Lawson's products included hardware, tools, and chemicals. Lawson was the parent company of several subsidiaries. Lawson and its subsidiaries combined to generate approximately $400 million in sales annually.

　　b.　Drummond American Corporation ("Drummond American"), which was a subsidiary of Lawson, was located in Vernon Hills, Illinois, and sold chemical solutions to the public and private sectors.

　　c.　Lawson sold its products through sales agents. These sales agents generally were permitted by Lawson to negotiate with their customers over the prices their customers would pay for Lawson's products. As a general rule, sales agents' commissions were greater if they sold products at higher prices.

d.  Until approximately December 15, 2005, Lawson maintained programs through which sales agents would provide items of value to individuals for purchasing Lawson products on behalf of those individuals' employers. As a general rule, sales agents could provide items of greater value to the individuals when those individuals purchased more products and at higher prices on behalf of their employers.

e.  Keogh, Inc. ("Keogh") was a business located in Lake Bluff and Woodstock, Illinois, that administered a program for Lawson called "Winners Choice." Under this program, Keogh issued checks made payable to the recipients and to retail stores designated by the recipients. Recipients could then use these checks to purchase items in the designated retail stores.

f.  Defendant ROGER CANNON, JR. was employed by Drummond American as: (i) a sales agent from approximately 1995 through approximately 1997; (ii) a district manager from approximately 1997 through approximately 2002; and (iii) a regional manager from approximately 2002 through approximately January 2006. As a sales agent, CANNON was responsible for selling Drummond American products to customers located in the Chicago area. As a district manager, CANNON continued to sell Drummond American products and supervised Drummond American sales agents in the Chicago area. As a regional manager, CANNON supervised Drummond American district managers and sales agents located in several states in the Midwest.

g.  School District U-46 provided public education to residents of several communities located in the northwest suburbs of Chicago in the Northern District of Illinois. At various times, Individual A, Individual B, Individual C, and Individual D were each responsible for purchasing supplies for the operation and maintenance of the public school building and facilities

within School District U-46. Based on their positions with School District U-46, Individual A, Individual B, Individual C, and Individual D owed a duty of honest services to School District U-46, including a duty of undivided loyalty, free of conflict between their personal interests and the public interests of School District U-46.

   h. Pursuant to the criminal laws of the State of Illinois (720 ILCS 5/33-1 and 720 ILCS 5/33-3), Individual A, Individual B, Individual C, and Individual D were:

    i. Prohibited from receiving, retaining, and agreeing to accept any property or personal advantage which they were not authorized by law to accept, knowing that such property or personal advantage was promised or tendered with intent to influence the performance of any act related to the employment or function of any public officer or public employee;

    ii. Prohibited from soliciting, receiving, retaining, and agreeing to accept any property or personal advantage pursuant to an understanding that they shall improperly influence or attempt to influence the performance of any act related to the employment or function of any public officer or public employee;

    iii. Prohibited from soliciting and knowingly accepting, for the performance of any act, a fee or reward which they knew was not authorized by law.

   i. Individual E was a municipal employee of the Village of Rosemont. As part of his duties, Individual E purchased chemical solutions on behalf of the Village of Rosemont. Based on this position with the Village of Rosemont, Individual E owed a duty of honest services to the Village of Rosemont, including a duty of undivided loyalty, free of conflict between his personal interests and the public interests of the Village of Rosemont.

   j. Individual F was a municipal employee of the City of Elgin. As part of his duties, Individual F purchased chemical solutions on behalf of the City of Elgin. Based on this

position with the City of Elgin, Individual F owed a duty of honest services to the City of Elgin, including a duty of undivided loyalty, free of conflict between his personal interests and the public interests of the City of Elgin.

2. Beginning no later than in or about 1995 and continuing until at least December 2005, at South Elgin, in the Northern District of Illinois, and elsewhere,

ROGER CANNON, JR.,
also known as "RJ Cannon,"

defendant herein, along with others known and unknown to the Grand Jury, devised and intended to devise, and participated in, a scheme and artifice to defraud Drummond American customers of money, property, and the intangible right to the honest services of their employees, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, as further alleged herein.

3. It was part of the scheme that CANNON offered and agreed to provide Individual A, Individual B, Individual C, Individual D, Individual E, and Individual F (collectively, the "Public Employees") with Winners Choice checks in order to induce them to purchase, and to reward them for purchasing, merchandise for their employers, such as chemical solutions, from Drummond American on behalf of the Public Employees' employers.

4. It was further part of the scheme that after the Public Employees purchased merchandise from Drummond American, CANNON ordered Winners Choice checks for the Public Employees from Keogh through Lawson. As a general rule, CANNON ordered a larger amount of Winners Choice checks for the Public Employees when they caused their employers to make purchases of a greater dollar value from Drummond American.

5.  It was further part of the scheme that in ordering Winners Choice checks through Lawson, CANNON misrepresented the employment of the Public Employees to make it appear that the Public Employees were employees of private, rather than government, entities.

6.  It was further part of the scheme that CANNON caused Keogh to mail Winners Choice redemption forms and checks to the Public Employees' home addresses to conceal from their employers the fact that CANNON had provided items of value to the Public Employees.

7.  It was further part of the scheme that, from approximately 1997 to 2005, CANNON, while district manager and regional manager, trained other sales agents on Drummond American's programs that allowed sales agents to offer and provide items of value to customers' employees, including by:

   a.  Introducing these programs to new Drummond American sales agents;

   b.  Supervising sales agents in CANNON's district and region during sales calls and critiquing their performance in offering items of value to customers' employees; and

   c.  Offering presentations at Drummond American national sales conferences that taught sales agents the proper way to offer and provide items of value to customers' employees;

8.  It was further part of the scheme that CANNON misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the aforementioned scheme.

9.  As a result of the scheme, CANNON received approximately $54,302 in commissions on sales to the Public Employees' employers and fraudulently provided:

   a.  Individual A with approximately $3,550 to which he was not entitled;

   b.  Individual B with approximately $3,525 to which he was not entitled;

        c.      Individual C with approximately $2,150 to which he was not entitled;

        d.      Individual D with approximately $650 to which he was not entitled;

        e.      Individual E with approximately $1,200 to which he was not entitled; and

        f.      Individual F with approximately $1,050 to which he was not entitled;

10. On or about November 29, 2000, at South Elgin, in the Northern District of Illinois,

ROGER CANNON, JR.,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be delivered by the United States Postal Service according to the directions thereon, an envelope to Individual A containing approximately $200 worth of Winners Choice certificates, addressed to Individual A's home address in South Elgin, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 1346.

## FORFEITURE ALLEGATION

The UNITED STATES ATTORNEY further alleges:

1. The allegations contained in Count One of this Information are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of his violation of Title 18, United States Code, Section 1341, as alleged in Count One,

>ROGER CANNON, JR.,
>also known as "RJ Cannon,"

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3. The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to approximately $54,302, which represents all proceeds, including commissions, that CANNON received from selling Drummond American products to customers through the Public Employees;

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant:

>a. Cannot be located upon the exercise of due diligence;

>b. Has been transferred or sold to, or deposited with, a third party;

    c.    Has been placed beyond the jurisdiction of the Court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

*[signature]*
UNITED STATES ATTORNEY